Taylor v. SSA                    CV-98-501-M    07/14/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Karen C. Taylor,
      Claimant

      v.                                        Civil No. 98-501-M

Kenneth S. Apfel, Commissioner
Social Security Administration,
      Defendant


                            **O R D E R**


      Pursuant to 42 U.S.C. § 405(g), claimant, Karen Taylor,

moves to reverse the Commissioner's decision denying her

application for Supplemental Security Income benefits under Title

XVI of the Social Security Act, 42 U.S.C. § 1381, et seq. (the

"Act"). Defendant objects and moves for an order affirming the

decision of the Commissioner.


                        **Factual Background**

I.    Procedural History.

      On April 22, 1996, claimant filed an application for

Supplemental Security Income under Title XVI of the Act, alleging

that she had been unable to work since September 7, 1995, due to

chronic lumbar strain, a mental disorder which manifested itself

in the form of panic attacks and agoraphobia, and carpel tunnel

syndrome.


      The Social Security Administration denied her application

initially and on reconsideration. On September 12, 1997,

claimant, her attorney, and an impartial vocational expert appeared before an Administrative Law Judge, who considered claimant's application de novo. On October 14, 1997, the ALJ issued his order, concluding that although claimant was unable to return to her prior work, she was capable of performing a range of light work and making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ concluded that claimant was not disabled, as that term is defined in the Act, at any time through the date of his decision.

Claimant then sought review of the ALJ's decision by the Appeals Council. On July 21, 1998, the Appeals Council determined that the ALJ's decision was supported by substantial evidence, thereby rendering it a final decision of the Commissioner, subject to judicial review. On August 31, 1998, claimant filed a timely action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 8), need not be recounted in this opinion.

**Standard of Review**

I.   <u>Properly Supported Findings by the ALJ are</u>
     <u>Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now, the "Commissioner"], with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Irlanda Ortiz v. Secretary of Health and Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).[1] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the claimant's position. <u>See</u> <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."). <u>See also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); <u>Tsarelka</u>

_____

[1]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769. Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II. The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a

4

continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove that her impairment prevents her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, the claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform. See Vazquez v. Secretary of Health and Human

5

_Services_, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner

shows the existence of other jobs which the claimant can perform,

then the overall burden to demonstrate disability remains with

the claimant.  See _Hernandez v. Weinberger_, 493 F.2d 1120, 1123

(1st Cir. 1974); _Benko v. Schweiker_, 551 F. Supp. 698, 701

(D.N.H. 1982).


When determining whether a claimant is disabled, the ALJ is

required to make the following five inquiries:

> (1)   whether the claimant is engaged in substantial
>       gainful activity;
>
> (2)   whether the claimant has a severe impairment;
>
> (3)   whether the impairment meets or equals a listed
>       impairment;
>
> (4)   whether the impairment prevents the claimant from
>       performing past relevant work; and
>
> (5)   whether the impairment prevents the claimant from
>       doing any other work.

20 C.F.R. § 404.1520.  See also 20 C.F.R. § 416.902.  Ultimately,

a claimant is disabled only if her:

> physical or mental impairment or impairments are of
> such severity that [s]he is not only unable to do [her]
> previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [s]he lives, or
> whether a specific job vacancy exists for [her], or
> whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

**Discussion**

I.   <u>Background - The ALJ's Findings</u>.

In concluding that Ms. Taylor was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since September 7, 1995.  Next, he concluded that claimant suffers from severe impairments: "The evidence supports the finding that Ms. Taylor has back pain, polyarthralgia syndrome, carpel tunnel syndrome and [a] panic disorder with agoraphobia, impairments which cause significant vocationally relevant limitations."  Transcript at 15.  Of particular significance in this appeal is the ALJ's implicit conclusion that, notwithstanding claimant's testimony to the contrary, neither her alleged blurred vision nor chronic fatigue imposed significant restrictions upon her ability to secure gainful employment in the national economy.

Having concluded that claimant did, in fact, suffer from severe impairments, the ALJ then considered whether those impairments, either alone or in combination, met the criteria of

7

any of the listed impairments described in Appendix 1 of the pertinent regulations (20 C.F.R., Part 404, Subpart P, Appendix 1). He concluded that they did not. Transcript at 15. Next, the ALJ addressed claimant's exertional and non-exertional limitations, concluding that she retained the residual functional capacity ("RFC") to perform the exertional demands of light work. Accordingly, based solely upon claimant's exertional capabilities, the ALJ noted that the Medical-Vocational Guidelines of Appendix 2 to the regulations (also known as the "Grid") would dictate a finding of "not disabled." Transcript at 22. Nevertheless, the ALJ found that claimant also suffered from several non-exertional limitations which made it impossible for her to "perform more than limited stooping or kneeling [or] perform work with more than simple instructions," and required her to be "limited to an isolated work setting, [in which there was] no intense pace and no high productivity goals." Transcript at 21. In light of those findings, the ALJ concluded that claimant was incapable of returning to her prior work, which required her to perform more than simple tasks in a production-oriented environment. He also acknowledge that because claimant suffered from non-exertional, as well as exertional, limitations, strict reliance upon the Grid was not appropriate.

Accordingly, the ALJ solicited testimony from the vocational expert. And, after reviewing the record and listening to testimony from claimant and the vocational expert, the ALJ

8

concluded that, notwithstanding her exertional and non-exertional limitations, claimant was capable of making an adjustment to work which exists in substantial numbers in the local and national economy. Among other things, the ALJ concluded that claimant was capable of working as a "surveillance system monitor." Transcript at 24. Consequently, he concluded that claimant was not disabled within the meaning of the Act.

II. Claimant's Subjective Complaints of Fatigue and Blurred Vision.

In this appeal, claimant challenges only the ALJ's implicit finding that neither her claimed blurred vision nor fatigue prevented her from obtaining gainful employment in the national economy. As evidence that she suffers from blurred vision and fatigue, claimant offered her own testimony at the hearing and submitted a copy of her prescription for Paxil, which lists blurred vision as a potential side effect of the medication. She claims that if he had ascribed proper weight to that evidence, the ALJ would have recognized that she was unable to perform the job of surveillance system monitor.[2]

    A. Lack of Medical Evidence of Blurred Vision or Chronic Fatigue.

---

2    In response to questioning by claimant's attorney, the vocational expert testified that if a person had blurred vision and/or needed to take a nap whenever he or she felt fatigued, then that person would not be able to act as a surveillance system monitor. Transcript at 54-55.

Claimant's medical records (as well as the documentation provided in support of her application for benefits) contain no references to any complaints of blurred vision or chronic fatigue. It is not unreasonable to presume that if claimant were experiencing blurred vision (perhaps as a side effect of the Paxil) and/or chronic fatigue, she would have, at some point, mentioned that fact to one or more of her treating physicians or her counselor. The ALJ was entitled to consider the fact that she made no reference to either alleged impairment in assessing the credibility of the testimony she provided at the hearing. See, e.g., Perez v. Secretary of Health and Human Services, 958 F.2d 445, 448 (1st Cir. 1991) ("The vocational expert did testify that if claimant's medications made her sleepy on a daily basis, she could not work. However, although claimant testified that her medications made her sleepy, there was no mention of this anywhere in the medical evidence."). And, based upon a number of factors which he identified, the ALJ concluded that claimant's testimony concerning the disabling nature of her impairments (including blurred vision and fatigue) was "not entirely credible." Transcript at 20.

In the absence of any medical evidence in the record which suggested that claimant suffered from blurred vision and/or fatigue, the ALJ was left only with: (a) claimant's testimony concerning blurred vision and fatigue; and (b) the fact that Paxil can, in some cases, cause a patient to experience blurred

vision.  In light of the ALJ's determination regarding the credibility of claimant's testimony, there was, at best, sparse evidence that she actually suffered from blurred vision or fatigue.

B.    Assessing Credibility and Subjective Complaints of Disability.

When determining a claimant's RFC, the ALJ must review the medical evidence regarding the claimant's physical limitations as well as her own description of those physical limitations, including her subjective complaints of pain.  See Manso-Pizzarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996).  When the claimant has demonstrated that she suffers from an impairment that could reasonably be expected to produce the pain or side effects she alleges,[3] the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit her ability to do basic work activities.

> [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  This includes medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided

---

3    Here, there is some evidence that one potential side effect of Paxil is blurred vision.  Claimant has not, however, directed the court to any evidence in the record which suggests that she suffers from an impairment or takes medication which could reasonably be expected to cause chronic fatigue.

by the treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual . . ..

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individuals' statements.

Social Security Ruling ("SSR") 96-7p (July 2, 1996). Those factors include the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type dosage, effectiveness, and side effects of any medication the claimant takes (or has taken) to alleviate pain or other symptoms; and any measures other than medication that the claimant receives (or has received) for relief of pain or other symptoms. Id. See also Avery, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3).

It is, however, the ALJ's role to assess the credibility of claimant's asserted inability to work in light of the medical record, to weigh the findings and opinions of both "treating sources" and other doctors who have examined her and/or reviewed her medical records, and to consider the other relevant factors identified by the regulations and applicable case law. Part of his credibility determination necessarily involves an assessment of a claimant's demeanor, appearance, and general

12

"believability."  Accordingly, if properly supported, the ALJ's credibility determination is entitled to substantial deference from this court.  See, e.g., Irlanda Ortiz, 955 F.2d at 769 (holding that it is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts").

Here, in reaching the conclusion that claimant's testimony concerning the disabling nature of her impairments was not entirely credible, the ALJ considered, among other things, her daily activities, which include watching television and occasional driving, both of which require visual acuity.  Thus, in addition to the fact that the record is devoid of any documentation which would support claimant's allegations of chronic fatigue or blurred vision, claimant's daily activities suggest that her claims concerning the disabling nature of her fatigue and blurred vision were overstated.  See, e.g., Report of Kathryn Betournay, D.Min., transcript at 173 ("Daily activities: Karen functions well on a day to day basis, with the exception of panic when going into large stores.  She compensates by choosing smaller stores, or going to large stores with a friend.").  See also Report of Francis Warman, Ph.D., transcript at 187 (noting that claimant is able, without substantial difficulty, to engage in a moderate range of daily activities and making no mention of any reports of either chronic fatigue or blurred vision).

13

With regard to her allegations of blurred vision, claimant has not directed the court to any document(s) in the record (nor has the court found any) which show that she reported this condition to any of her treating physicians. It is, perhaps, revealing that claimant appears never to have reported having blurred vision to Dr. Gaier Rush, the physician who prescribed the medication which claimant says caused her to experience blurred vision. Moreover, both of the physicians who reviewed her medical records concluded that they revealed no evidence of visual limitations. Transcript at 117.[4]

With regard to claimant's complaints of fatigue and the need to take daily naps, at least one treating physician (who specializes in treating sleeping disorders and who was concerned that claimant's headaches might be caused by sleep apnea or another sleeping disorder) specifically noted that the claimant did "not have excessive daytime somnolence." November 15, 1996 report of Michele Gaier Rush, M.D., transcript at 157. And, consistent with the ALJ's conclusion, the record shows that

---

4     While claimant suggests that her blurred vision was a side effect of Paxil, which was not prescribed until April of 1997, transcript at 146, there are points in the record at which claimant says she had blurred vision prior to that date. See transcript at 122. Accordingly, although the findings of the DDS physicians pre-date claimant's use of Paxil, they are, nevertheless, valuable because they are based upon a review of claimant's medical records during a period in which she claims to have been suffering from blurred vision. See also Report of Marcos Ramos, M.D., transcript at 208 (observing that "[e]xamination of the ears, eyes, nose and throat were within normal limits" and not indicating that claimant reported any problems with blurred vision).

14

claimant was unhindered in her ability to perform daily activities by fatigue.

Finally, there is evidence in the record which suggests that, while likely not an intentional effort to deceive, claimant tended to overstate the symptoms of her impairments. For example, when examining claimant in January of 1996, Dr. Ramos observed:

> Direct palpation of the lumbar region elicited multiple complaints of pain. However, when examined indirectly, simultaneous palpation of the lumbar region, along with other nonrelated areas, while diverting the patient to the latter, elicited no complaints of pain.

Report of Marcos Ramos, M.D., transcript at 209. See also ALJ's disability determination, transcript at 16.

In the end, the propriety of the ALJ's decision to omit blurred vision and fatigue from the hypotheticals presented to the vocational expert (and implicitly conclude that neither alleged condition limited claimant's ability to secure gainful employment as a surveillance system monitor) turns on the validity of his determination that claimant's testimony (particularly that regarding blurred vision and fatigue) was not entirely credible. Stated somewhat differently, claimant does not allege that the ALJ erred by failing to consider objective evidence in the record; instead, she claims that he committed reversible error by failing to fully credit her testimony that

15

she suffered from blurred vision and fatigue. In light of the evidence presented to the ALJ, however, the court is constrained to conclude that the ALJ's decision to discount (or even disregard) claimant's subjective complaints of blurred vision and chronic fatigue was supported by substantial evidence.

## Conclusion

For the foregoing reasons, the ALJ's determination that claimant was not disabled within the meaning of the Act was supported by substantial evidence. Accordingly, claimant's motion to reverse the decision of the Commissioner (document no. 6) is denied, and the Commissioner's motion to affirm his decision (document no. 7) is granted. The Clerk of the Court shall enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 14, 1999

cc:  Brian P. McEvoy, Esq.
     David L. Broderick, Esq.

16