Arnold v. SSA                          CV-01-158-JD   11/15/01
                    UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Brenda L. Arnold

        v.                                 Civil No. 01-158-JD
                                           Opinion No. 2001 DNH 209
Larry G. Massanari, Acting
Commissioner, Social
Security Administration


                              O R D E R


        The plaintiff, Brenda Arnold, brings this action pursuant to

42 U.S.C.A. § 405(g) seeking judicial review of the decision by

the Acting Commissioner of the Social Security Administration

denying her application under Title II for disability insurance

benefits.  Arnold, who alleges a disability due to back pain and

cataracts, seeks to reverse the decision denying her application,

arguing that the Administrative Law Judge ("ALJ") made a series

of errors in evaluating her application.  The Acting Commissioner

moves to affirm the decision.



                          Standard of Review

        The court must uphold a final decision of the Commissioner

denying benefits unless the decision is based on legal or factual

error.  See Manso-Pizarro v. Sec'y of Health and Human Servs., 76

F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S.

877, 885 (1989)).  The court's "review is limited to determining

whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The Commissioner's factual findings are conclusive if based on substantial evidence in the record. See 42 U.S.C.A. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation omitted).

## Background

Brenda Arnold was born in 1954. She earned her high school equivalency diploma and graduated from a program in practical nursing as a Licensed Practical Nurse in 1984. She then worked as a licensed practical nurse, a child care provider, a waitress, a telephone operator, and a secretary. Her last work was as a secretary in her husband's trucking company which went out of business on December 31, 1996. Arnold's last date of insured status for social security benefits was also December 31, 1996, and she alleges a disability beginning on that date.

Arnold was diagnosed with a cataract in her left eye in 1993. After an evaluation of the cataract in 1998, Arnold was referred to a specialist for surgery. She said that she was having increased difficulty reading and that she had not driven

in over a year because of her vision. Cataract extraction and lens implantation surgery was performed in the fall of 1998. The surgery corrected her vision to 20/20.

Arnold began treating with a chiropractor, Dr. Parent, in April of 1996 because of low back pain. She treated with Dr. Parent on a weekly basis until November of 1996. During that time Dr. Parent's notes indicate that Arnold initially reported back pain and then did not complain of low back pain again until October. In the meantime, her complaints ranged from stress to hot feet. During October and November she reported low back pain only once and then reported that she was achy all over at the next three visits, without mentioning back pain.

She resumed treatment in February of 1997 when Dr. Parent noted that she felt "tight all over," which increased with stress. At the next appointment, in April of 1997, Dr. Parent noted that Arnold felt good and had not smoked for three months. She complained of mid thoracic pain at the second appointment in April and then Dr. Parent's comments show no change through September of 1997. The treatment notes indicate periods of low back pain in April and May and again in August of 1998. She received no treatment between August of 1998 and August of 1999 when she reported improvement. Her treatment again lapsed for six months and she returned in May of 2000 when examination

3

related to low back pain was done.

Arnold filed her application for benefits in June of 1999. A disability determination services consultant made a disability determination of Arnold in July of 1999. He found, based on the lack of evidence before December 31, 1996, her last insured date, that Arnold did not suffer from a severe impairment.

Dr. Parent completed a physical capacity evaluation of Arnold in September of 1999. He reported that Arnold could lift and carry up to twenty pounds occasionally and less than ten pounds frequently. He limited her to being able to sit for about two hours and stand and walk for less than two hours, with the opportunity to change position, during an eight hour day. He said that she could never twist, bend, crouch or climb ladders but could climb stairs. He also limited her ability to push and pull and to perform tasks involving gross manipulation due to a stiffening of the vertebra associated with a disorder of the nerve roots affecting her legs and indications of lumbar disc lesions. A year later, in September of 2000, Dr. Parent wrote to Arnold's attorney that her limitations reported in September of 1999 were similar to her limitations on or before December 31, 1996.

Another disability determination services consultant issued a disability determination in February of 2000. He also stated

4

that there was insufficient medical evidence to support Arnold's disability claim before December 31, 1996.

Arnold and her husband testified at her hearing before the ALJ held on October 23, 2000. Arnold stated that when she first began treatment for her back pain with Dr. Parent in April of 1996, she could not walk long distances without a cane and required a wheelchair to shop because of excruciating back pain. She said that on December 31, 1996, she could walk for only a very short period of time and could sit for a maximum of fifteen to twenty minutes before changing position or lying down. She said that at the time of the hearing she was taking Valium, muscle relaxers, and pain killers, which made her dizzy, confused, nauseous, and drowsy.

She testified that she could do laundry and light housekeeping but that her husband and children did vacuuming and sweeping. She said that she sometimes required assistance washing her hair but that she could shower because of a seat and bar her husband had installed in the shower. She could drive only short distances because of her limited ability to tolerate sitting. She said that she could not leave the house two to three days each week because of back pain.

Her husband testified that on or before December 31, 1996, his wife could not walk, sit, stand, or lie down for long periods

5

of time and that she used a cane or a wheelchair at times. He said that he did household chores that she was not able to do. He also said that he did most of the driving. He indicated that his wife had taken medication for a long time and that she always seemed to be tired.

A vocational expert also testified at the hearing. The ALJ posed a hypothetical question assuming Arnold's age in December of 1996, her educational level, her past relevant work, and a residual functional capacity for light and sedentary work with certain limitations. The limitations were that she required a sit/stand option, that she was taking medications which caused some side effects that would require her to avoid working at heights and with machinery and to have a job which was non-complex and required only simple instructions. The vocational expert testified that Arnold would not be able to return to past relevant work. With respect to other work that she could do, the vocational expert suggested work as a laundry sorter, a hand packer, a laundry marker, a photographic finisher, a jewelry preparer, and a security monitor. When the ALJ added restrictions to preclude bending and lifting, to limit sitting to twenty minutes, and to consider her poor balance, use of a cane, and need for extended rest periods at unpredictable times and naps of one or two hours, the vocational expert testified that

6

the need for rest and naps would rule out all employment. The vocational expert also said that an inability to lift at all would rule out all employment.

The ALJ found that although Arnold had an impairment or combination of impairments at the "severe" level, her impairments did not meet or equal one of the impairments listed in the regulations. The ALJ also found that her description of her limitations was not entirely credible. He concluded that she retained the residual functional capacity to lift up to twenty pounds occasionally and up to ten pounds frequently with a need to avoid heights and dangerous machinery. She also required a sit/stand option, and she was limited to simple, non-complex work. Although she could not return to her past relevant work, the ALJ found that she was capable of working. Therefore, Arnold was not disabled for purposes of social security insurance benefits.

## Discussion

On appeal, Arnold contends that the Commissioner's decision denying her benefits must be reversed because the ALJ erred in evaluating her application. Specifically, Arnold argues that the ALJ failed to assign the proper weight to the report of her treating chiropractor, lacked evidence to support his functional

findings, failed to properly address the plaintiff's testimony and her credibility, and improperly relied on the opinion of the vocational expert. The Acting Commissioner moves to affirm the decision, arguing that the ALJ's decision was supported by substantial evidence in the record and was not erroneous.

Arnold's application was denied at step five of the sequential evaluation process set forth in 20 C.F.R. § 404.1520.[1] At the fifth step, the Acting Commissioner has the burden to show that despite the claimant's severe impairment, she retained the residual functional capacity to do work other than her past work during the covered period and that work the claimant can do exists in significant numbers in the relevant economies. See Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991). That burden is met if the ALJ followed the correct legal standard and

---

[1] The ALJ is required to make the following five inquiries when determining if a claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment;
> (3) whether the impairment meets or equals a listed impairment;
> (4) whether the impairment prevents the claimant from performing past relevant work; and
> (5) whether the impairment prevents the claimant from doing any other work.

See 20 C.F.R. § 404.1520.

if substantial evidence in the record supports the ALJ's factual findings.

A.   Treating Physician's Opinion

An ALJ is not at liberty to evaluate medical records himself or to ignore a treating physician's properly supported diagnosis or opinion. See Nguyen, 172 F.3d at 35. A properly supported opinion of a treating physician is to be given controlling weight. See 20 C.F.R. § 404.1527(d)(2). When a treating physician's opinion is not entitled to controlling weight under § 404.1527(d)(2), the ALJ must determine how much weight to afford the opinion in light of the prescribed factors. See id.

Arnold argues that the ALJ failed to assign the proper weight to Dr. Parent's report of her limited functional capacity. Dr. Parent, however, is a chiropractor, not a physician. A chiropractor is not an accepted medical source within the meaning of the social security regulations. See Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 530 (6th Cir. 1997) (interpreting § 404.1527(d) in light of § 404.1513(a)). As a result, the ALJ had discretion in how much weight to afford Dr. Parent's report. See Diaz v. Shalala, 59 F.3d 307, 314 & n.8 (2d cir. 1995).

Arnold provides no records, opinions, or reports, pertaining to her back condition, from a medical doctor. The ALJ considered

9

Dr. Parent's report and stated his reasons for finding it unpersuasive.  Since the ALJ followed the proper standard and the reasons given are supported by the record, no error occurred.

B.  <u>Residual Functional Capacity</u>

Arnold argues that the ALJ's determination of her residual functional capacity to do work in the light and sedentary ranges with certain limitations was not supported by record evidence. In his decision, the ALJ explained that his conclusion was consistent with the "paucity of medical evidence in [the] file prior to the date the claimant was last insured [December 31, 1996]."  Although Dr. Parent provided a more limited evaluation, in September of 1999, the disability determination services consultant physicians found, based on her record, that Arnold did not even have a severe impairment due to the lack of medical information from the relevant period and, therefore, did not evaluate her residual functional capacity.  The ALJ's evaluation demonstrates a consideration of both the consultants' opinions and Dr. Parent's report and is sufficiently supported by the record.

C.  Arnold's Testimony and Credibility

Arnold contends that the ALJ failed to properly address her testimony at the hearing, failed to mention her husband's testimony, and failed to make adequate credibility determinations.  The ALJ must assess the severity of a claimant's subjective symptoms and the extent to which those symptoms impair the claimant's ability to work.  See 20 C.F.R. § 404.1529; Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 23 (1st Cir. 1986).  The symptoms and their effects are assessed by considering all of the pertinent evidence of record including "claimant's statements, opinions of treating physicians, reports of claimant's activities and claimant's course of treatment." Nguyen, 172 F.3d at 34; see also DaRosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 25-26 (1st Cir. 1986).

The ALJ determined that Arnold's allegations about her limitations were not entirely credible.  He stated that he had considered Arnold's assertions of disabling symptoms.  He found, however, that the record showed that Arnold had not required frequent medical treatment during the relevant period and was not receiving any medication for pain or other symptoms.

The record establishes that Arnold did not receive any medical treatment at all for her back condition.  In addition, her treatment with Dr. Parent occurred regularly between April

11

and November of 1996, but his notes do not support her description of her condition at that time. After her November appointment, she next saw Dr. Parent in February of 1997 complaining of feeling achy all over and stress and at the next visit, in April of 1997 she said that she felt good. The ALJ states that he considered the entire record, which would include Arnold's husband's testimony, and she has not shown that the testimony was not considered. The record amply supports the ALJ's conclusion.

D.  Improper Reliance on Vocational Expert

In order to rely on the opinion of a vocational expert, the ALJ must pose a hypothetical question that accurately reflects the claimant's functional limitations. See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 429 (1st Cir. 1991). Arnold argues that the vocational expert's opinion was based on an erroneous hypothetical question because it did not include the limitations found by Dr. Parent in his report. Since the ALJ properly evaluated Arnold's functional capacity, as is discussed above, the ALJ also properly relied on the vocational expert's opinion that jobs existed that Arnold could do.

## Conclusion

For the foregoing reasons, the plaintiff's motion to reverse (document no. 5) is denied.  The Acting Commissioner's motion to affirm (document no. 6) is granted.

The clerk of court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

November 15, 2001

cc:   Jeffrey A. Schapira, Esquire
      David L. Broderick, Esquire

13