Levesque v. SSA                          CV-00-485-JD   11/28/01
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Louis Levesque

        v.                              Civil No. 00-485-JD
                                        Opinion No. 2001 DNH 211
Larry Massanari,
Acting Commissioner,
Social Security Administration


                              O R D E R


        The plaintiff, Louis Levesque, brings this action pursuant

to 42 U.S.C.A. § 405(g) seeking judicial review of the decision

by the Acting Commissioner of the Social Security Administration

denying his application under Title II for disability insurance

benefits.  Levesque contends that a combination of his physical

and mental impairments rendered him disabled during the period of

his insured status.  He moves to reverse the decision of the

Acting Commissioner, arguing that the Administrative Law Judge

("ALJ") failed to properly evaluate the evidence of his

psychiatric condition and the impairments it caused.  The Acting

Commissioner moves to affirm the decision.



                          Standard of Review

    The court must uphold a final decision of the Commissioner

denying benefits unless the decision is based on legal or factual

error.  See Manso-Pizarro v. Sec'y of Health & Human Servs., 76

F.3d 15, 16 (1st Cir. 1996) (citing <u>Sullivan v. Hudson</u>, 490 U.S. 877, 885 (1989)). The court's "review is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999). The Commissioner's factual findings are conclusive if based on substantial evidence in the record. <u>See</u> 42 U.S.C.A. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (internal quotation omitted).

## Background

Louis Levesque was injured at work in July of 1988 when he was struck in the back by a back hoe. He was first treated for the injury in September of 1988 when he went to the emergency room at Elliot Hospital and was diagnosed with acute lumbar strain. Levesque continued to seek medical attention for low back pain and radiating pain from that time through the time of his last application for benefits.

Levesque was evaluated for mental impairment in December of 1992 by A. M. Drukteinis, M.D. who prepared a psychological profile. Dr. Drukteinis described Levesque as psychologically unsophisticated, with low education and low intellectual

capacity, who was likely to be preoccupied with bodily functions and health and to overreact to illness. Test results showed evidence of depression, mood swings, difficulties dealing with stress, difficulties sustaining treatment, and somatization potential. Dr. Drukteinis diagnosed adjustment disorder with mixed emotional features.

In August of 1993, Levesque was evaluated by Roger Cawley, M.D., as requested by the Commissioner. Dr. Cawley rated Levesque as having a fair ability to follow rules and to relate to co-workers, and a fair to poor ability to use judgment, interact with supervisors, deal with work stresses, function independently, and maintain concentration. He found that Levesque had a good to fair ability to follow and carry out simple instructions but only poor to no ability to follow complex or detailed instructions. Based on his assessments, Dr. Cawley concluded that Levesque could not manage his benefits in his own best interest.

A Disability Determination Services ("DDS") consultative examination was done in November of 1994 by James Iovino, M.Ed. Iovino noted that Levesque appeared to be in pain during the interview and that he appeared to be tired. Levesque's thought processes were normal, and he demonstrated average intelligence with learning deficits. Iovino wrote that Levesque's social

interactions and task performance may have been limited. He diagnosed post traumatic stress disorder, pain disorder associated with psychological factors and a general medical condition, and lower back pain.

A second DDS evaluation was done by Paul Finn, Ph.D., in December of 1994, based on two examinations. Dr. Finn found depression and pain behaviors. A personality assessment inventory showed moderate elevations in depression and adjustment disorders with mixed emotional features. Dr. Finn diagnosed Levesque with significant adjustment disorder with depression secondary to chronic pain.

Priscilla Cusi, M.D., performed a third DDS evaluation in November of 1995. Levesque reported chronic sleep disturbance, lack of motivation, poor concentration, and intermittent suicidal ideation. Dr. Cusi found that Levesque was focused on pain relief and appeared to be cognitively limited with poor attention span and unable to perform any calculations. Dr. Cusi reported that the clinical picture was consistent with major depression, personality disorder with antisocial traits, and chronic back pain. She recommended taking Elavil as treatment for depression. Dr. Cusi found that Levesque had moderate restrictions on his activities of daily living and ability to maintain social functioning and frequent deficiencies of pace, persistence, and

concentration resulting in a failure to perform tasks in a timely manner and repeated episodes of deterioration in work situations.

Levesque first applied for Supplemental Security Income ("SSI") benefits in April of 1991 and for Disability Insurance benefits in May. His Disability Insurance ("Title II") benefits application was denied in August and no further appeal was taken. The record does not include the disposition of the SSI application. Levesque again applied for Title II benefits in October of 1991 and that application was denied in January of 1992 without further action.

Levesque filed a third application for benefits in September of 1992. That application was also denied initially and on reconsideration. Levesque requested a hearing before an ALJ, which was held in July of 1993. The ALJ issued his decision on October 15, 1993, in which he found that the psychological assessment of Levesque indicating that he had only fair to poor abilities in several areas was not a credible assessment. The ALJ also noted that Levesque did not claim a disability based on depression or a mental impairment. He concluded that the record did not show a medically determinable mental impairment. Levesque was determined to be not disabled. The Appeals Council denied Levesque's request for review, and no further action was taken.

Levesque filed a fourth application on October 18, 1994. He claimed a physical disability due to his back injury. The application was denied initially and on reconsideration. Levesque requested a hearing which was held in December of 1995. The ALJ issued his decision in January of 1996 in which he found that Levesque was not disabled. Levesque requested Appeals Council review and amended his claim to include disability based on major depression. The Appeals Council remanded his case for further evaluation. The hearing was held in October of 1997.

The ALJ issued his decision in January of 1998 in which he found that Levesque had been disabled for purposes of his SSI application since November 13, 1995. With respect to the Title II application, however, the ALJ found that Levesque had insured status only until December 31, 1993. The ALJ concluded that Levesque had not shown good cause to reopen the prior decisions that found he was not disabled. For that reason, the applicable period for Levesque's Title II claim was between October 15 and December 31, 1993. The ALJ found that Levesque was not disabled during that period. The Appeals Council declined review.

## Discussion

Levesque argues that the ALJ's determination that he was not disabled within the covered period is in error because the record shows that he had psychiatric impairments that restricted his mental functioning. He contends that the evidence shows that his condition during the covered period was similar in severity to his condition in November of 1995 when the ALJ concluded that he became disabled for purposes of SSI benefits. He also contends that the ALJ should have consulted with a medical expert to interpret the medical evidence of his mental impairment.

Levesque's application was denied at step five of the sequential evaluation process set forth in 20 C.F.R. § 404.1520.[1] At the fifth step, the Acting Commissioner has the burden to show that despite the claimant's severe impairment, he retained the

---

[1] The ALJ is required to make the following five inquiries when determining if a claimant is disabled:

  (1) whether the claimant is engaged in substantial gainful activity;
  (2) whether the claimant has a severe impairment;
  (3) whether the impairment meets or equals a listed impairment;
  (4) whether the impairment prevents the claimant from performing past relevant work; and
  (5) whether the impairment prevents the claimant from doing any other work.

See 20 C.F.R. § 404.1520.

7

residual functional capacity to do work other than his past work during the covered period and that work the claimant can do exists in significant numbers in the relevant economies.  See Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  That burden is met if the ALJ followed the correct legal standard and if substantial evidence in the record supports the ALJ's factual findings.

Because the ALJ did not reopen Levesque's prior application which resulted in a determination of not disabled on October 15, 1993, that decision remains binding and establishes, by claim preclusion, that Levesque was not disabled as of that date.  See Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1140 (1st Cir. 1988).  To be entitled to benefits, Levesque must have become disabled after October 15, 1993, but before the expiration of his insured status on December 31, 1993.  See Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982).

An ALJ is not qualified to interpret raw medical data for purposes of assessing a claimant's functioning capacity.  See Nguyen, 172 F. 3d at 35.  In complex cases, an ALJ may employ a medical advisor to explain medical records in terms that are understandable.  See Perales, 402 U.S. at 408.  A medical advisor is not necessary, however, to interpret medical information pertinent to functioning capacity if only a commonsense judgment,

8

rather than a medical judgment, is required. See <u>Gordils v.</u> <u>Sec'y of Health & Human Servs.</u>, 921 F.2d 327, 329 (1st Cir. 1990).

In this case, the evidence Levesque cites to show that he was disabled by a combination of his physical and mental impairments does not show disability during the relevant period. The medical records pertaining to his condition before October 15, 1993, are irrelevant, since it is established that he was not disabled as of that date.

The only cited medical evidence during the eligible period is a note in December of 1993 by Dr. Nagel, a physiatrist, who was treating Levesque for complications that had resulted from treatment of his low back pain. Dr. Nagel reported that Levesque's condition was about the same as it had been in September of 1993, and that the prescribed medication, Sinequan, continued to help. Since Levesque was not disabled in September of 1993 and his condition remained the same in December, Dr. Nagel's note corroborates the ALJ's determination.

The records cited by Levesque from January and February of 1994, just after his eligible period ended, also indicate no change. In contrast, Dr. Cusi's examination in November of 1995, indicates significant changes in Levesque's mental condition, which supports the ALJ's determination of disability as of that

time.

The pertinent evidence of record supports the ALJ's determination that Levesque was not disabled during the relevant period. Therefore, the Acting Commissioner's decision denying Levesque's application for Title II benefits must be affirmed.


## Conclusion

For the foregoing reasons, the claimant's motion for an order reversing the decision of the Acting Commissioner (document no. 9) is denied. The Acting Commissioner's motion for an order affirming the decision (document no. 10) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

November 28, 2001

cc:   Raymond J. Kelly, Esquire
      David L. Broderick, Esquire

10