Diane WOJCIK, etc., et al.,
Plaintiffs, Appellants,

v.

TOWN OF NORTH SMITHFIELD,
et al., Defendants, Appellees.

No. 95–1594.

United States Court of Appeals,
First Circuit.

Heard Nov. 8, 1995.

Decided Feb. 1, 1996.

Miriam Weizenbaum, Pawtucket, RI, with whom Amato A. DeLuca and Mandell, DeLuca & Schwartz, Ltd., Providence, RI, were on brief, for appellants.

Andrew B. Prescott, Providence, RI, with whom Steven M. Richard and Tillinghast Collins & Graham, were on brief, for appellees Rhode Island Rape Crisis Center, Inc., Marion Marceau and Carl Costanza.

Kathleen M. Powers, Providence, RI, with whom Marc DeSisto and DeSisto Law Offices, were on brief, for appellees Town of North Smithfield, Henrietta Delage, Christine Davidson, Lorraine Nault, Richard Smith, Terri Leoni, Richard Brady, Charles T. Shunney and Deborah Mancuso.

Before CYR, BOUDIN and STAHL, Circuit Judges.

PER CURIAM.

In the district court, John and Diane Wojcik filed a 32–count complaint including claims under 42 U.S.C. § 1983 and under state law for an array of offenses including kidnapping. The defendants included the Town of North Smithfield, the Rhode Island Rape Crisis Center, Inc. ("Crisis Center") and a number of school officials, teachers and others. All of these claims derived from two reports of possible child abuse, one initiated by a teacher and the other by a Crisis Center employee teaching a special class in school. The facts are set out at some length in Chief Judge Lagueux's thorough opinion in *Wojcik v. Town of North Smithfield*, 874 F.Supp. 508 (D.R.I.1995), and we confine ourselves to a skeletal summary.

The first incident occurred in March 1990 in connection with a program conducted by the Crisis Center on child abuse and other topics for sixth grade children at a North Smithfield elementary school. The Wojciks' daughter Mary was a student in the class. Based on her reactions to the program and what she said, the Crisis Center "teacher" advised the Rhode Island Department of Children and Their Families ("DCF") that she suspected that Mary might be the victim of child abuse in the form of excessive corporal discipline. A DCF investigator visited the Wojcik home, asked questions, and concluded that no abuse had occurred.

The second incident, involving a different teacher and a different Wojcik child, occurred almost a year later in January 1991. The child, Katherine Wojcik, made statements to her fifth grade teacher that led the teacher to believe that excessive physical punishment was being used against Katherine. Later, reading journal entries made by Katherine, the teacher's concerns grew, and she and the school principal jointly called DCF. Another DCF investigation occurred in January 1991. After talking to the Wojciks and their children, DCF closed this case as well. The lawsuit followed.

In January 1995, the district court on a motion for summary judgment dismissed a number of the Wojciks' claims against various defendants. 874 F.Supp. at 530. The remaining claims were tried in April and May 1995, but at the close of the plaintiffs' case, the district court granted judgment as a matter of law under Fed.R.Civ.P. 50 in favor of the remaining defendants on all remaining claims. From the bench Judge Lagueux delivered a substantial oral opinion that is unreported. These appeals followed challenging both the summary judgment and the directed verdict.

So far as the reports to DCF were concerned, the district court concluded that those defendants involved in the making of the reports acted reasonably and in good faith. As to the section 1983 claims, these determinations established both the lack of a constitutional violation, *DeCosta v. Chabot*, 59 F.3d 279, 280 (1st Cir.1995), and the presence of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As for the state claims, Rhode Island law requires anyone with reasonable cause to suspect child abuse to report it to DCF and provides that a good faith report creates immunity to a civil or criminal suit. Rhode Island General Laws §§ 40–11–3(a), –4. The district judge found the reports were protected under this provision against state claims based on the reports.

■ On appeal, the Wojciks argue cogently that the Crisis Center counselor, and later Katherine's teacher, misunderstood what the children were saying; and, in the case of the journal entries, we are told that Katherine now says that the entries were inaccurate. But state law required reports to be made if a reasonable suspicion existed; it is DCF's role—not the teacher's—to carry out the investigation; and nothing in this record seriously suggests any culpable mishandling or malice in the filing of the reports with DCF.

■ The only novel element in the claims is the Wojciks' charge that the reports aside, the Fourth Amendment was violated when school officials transported Katherine by car from one school to another to permit a DCF investigator to talk with her about the second incident. The Wojcik sisters were in different schools, and the school officials thought that it would be more comfortable, in a manifestly uncomfortable situation, if the children were together when questioned. Katherine was upset by the trip and went with reluctance, if not actual resistance. It is on this trip that the Wojciks also based their kidnapping, false imprisonment and assault claims.

The Fourth Amendment has been applied to public schools officials, primarily in the investigation of student misconduct or crime. *E.g., Vernonia School District v. Acton,* — U.S. ——, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995); *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The Fourth Amendment, however, protects against *unreasonable* seizures. Nothing in the present facts made it unreasonable for the school, acting *in loco parentis,* to move one of the children from one school to another school in the vicinity, so that both children could be questioned together by a state official following upon a possible abuse report made by one of the teachers. The claim fails both on the merits and the qualified immunity grounds.

■ Although the Wojciks renew their many state claims on appeal, the principal weight of their brief is on the federal claims that we have just discussed. The state claims made by the Wojciks are largely answered by the district court's determinations of reasonableness and good faith. The district court discussed the state claims both in its published opinion and its oral one, and we have nothing to add to the discussion. 874 F.Supp. at 524–25. However the state immunity statute may be construed, it clearly covers reports made reasonably *and* in good faith.

■ The district court, of course, was not the fact finder. In granting summary judgment, its rulings were based on the lack of material facts in dispute; and in granting the directed verdict, the court's rulings determined that no reasonable jury could find that the conduct in question was unreasonable or that the defendants acted in bad faith. We too think that the material facts were essentially beyond reasonable dispute. The Wojciks say that the reasonableness of the defendants' conduct is a proper issue for the jury; but issues of characterization, like issues of raw fact, are properly resolved by the court when no reasonable jury could find otherwise.

We appreciate the Wojciks' sense of outrage that they have been subject to two embarrassing inquiries that found no merit to any charge of child abuse. But there is no way for the government to protect children without making inquiries that in many cases do turn out to be baseless; so, too, the prosecution of crimes leads in some cases to acquittals and intrusive tax audits sometimes produce refunds. Where the government officials act reasonably and in good faith, there is usually no federal remedy. If the Wojciks were encouraged to think otherwise, their advisors were mistaken.

Official misconduct does occur and local officials sometimes do act out of malice or incompetence. We have ourselves reversed the district court where we thought there was enough suspicion of official misconduct to defeat summary judgment or to require a section 1983 case to proceed to a jury. *Rubinovitz v. Rogato,* 60 F.3d 906 (1st Cir.1995). But here Judge Lagueux was scrupulously careful: he granted summary judgment only on certain claims and after exhaustive discussion; and on the balance of the case conducted a trial that other judges might well have deemed unnecessary to the point where he concluded that the claims were hopeless. With that, the Wojciks will have to be content.

■ There is a substantial question whether the Wojciks' appeal from the summary judgment order was timely, and a motion to dismiss that appeal is before us. The notice of appeal was filed late and the Crisis Center defendants contest on appeal the district court's finding of excusable neglect in allowing the Wojciks' belated motion to extend the time to appeal under Fed.R.App.P. 4(a)(4).

This is a difficult question, *see Gochis v. Allstate Ins. Co.*, 16 F.3d 12, 15 (1st Cir. 1994), but we conclude that it need not be addressed because the affirmance on the merits amply vindicates the interests of those defendants.

*Affirmed.*