Evans v. SSA                          CV-02-459-M     12/04/03
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Brenda Evans,
     Claimant

     v.                                   Civil No. 02-459-M
                                          Opinion No. 2003 DNH 208
Jo Ann B. Barnhart,
Commissioner, Social
Security Administration,
     Respondent


                         O R D E R


     Pursuant to 42 U.S.C. § 405(g), Brenda Evans moves for

reversal of the Commissioner's decision denying her application

for Social Security disability insurance benefits, or DIB, under

Title II of the Social Security Act, 42 U.S.C. § 423, and for

supplemental security income, or SSI, under Title XVI, 42 U.S.C.

§ 1382.  The Commissioner, in turn, moves for an order affirming

her decision.  For the reasons given below, the decision of the

Commissioner is affirmed.


                      **Standard of Review**

     The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)© (establishing § 405(g) as the standard of review for SSI decisions). However, the court "must uphold a denial of social security . . . benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

The Commissioner's findings of fact must be supported by substantial evidence. "The substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriquez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).[1]

## Background

The parties have submitted a Joint Statement of Material Facts (document no. 9), which is part of the court's record. The facts included in that statement are outlined here to the extent necessary to provide adequate background for the analysis that follows.

---

[1] "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769 (citations omitted). Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).

On June 2, 1999, claimant filed for SSI and DIB benefits. That claim was denied on October 14, 1999, and claimant never appealed.[2] Claimant filed a second claim for SSI benefits on May 17, 2000, and a second claim for DIB benefits on May 30, 2000, asserting that she had been unable to work since May 15, 2000, due to small vessel disease and headaches. Her claim was denied, and she requested a hearing before an ALJ.

Between October 14, 1999, and the date of her ALJ hearing, April 26, 2001, claimant received the following medical treatment:

> March 16, 2000: Office visit with Nurse Elaine Johnson at Partners in Healthcare, for a PAP smear and information on hormone replacement therapy. (Administrative Transcript (hereinafter "Tr.") at 205.)
>
> May 12, 2000: Office visit with Nurse Johnson. Complained of headache, which was treated with a prescription for Fioricet. (Tr. at 208.)
>
> May 17, 2000: Office visit with Nurse Roberta Thomas at Partners in Healthcare. Complained of bilateral pain and swelling below the knees. Nurse Thomas observed slightly swollen lower legs and feet, tortuous blood vessels, appropriate circulation for feet, and vibratory and monofilament sense; diagnosed small

---

[2] Thus, claimant is bound by the determination that as of October 14, 1999, she was not disabled. See 20 C.F.R. §§ 404.905 and 416.1405.

4

vessel disease; and recommended compression hose, work that did not involve standing all day, smoking cessation, and continuation on previously prescribed medications.[3] (Tr. at 209.)[4]

September 20, 2000: Office visit with Dr. Brooks of the Good Neighbor Health Clinic. Requested refills for Inderal (for migraine headaches) and Procardia XL (for hypertension), which claimant had been without for three or four months. Dr. Brooks recommended a follow-up visit for a more complete evaluation. (Tr. at 224.)

September 27, 2000: Office visit with Dr. Maureen Williams of the Good Neighbor Health Clinic, for a blood pressure check (claimant also mentioned her pending application for disability benefits). Dr. Williams recorded leg pain sitting, standing, and walking; observed poor peripheral circulation, thickened toenails, and many varicosities; and recommended support stockings, Hawthorne twice a day, thirty minutes of exercise per day, and hot/cold foot soaks. (Tr. at 226-27.)

---

[3] The "plan" included in the one-page "progress note" that resulted from the May 17 office visit states, in full:

> Patient encouraged to wear compression hose at all times, especially while working. I wrote a note for work that she cannot continue standing up all day. I also strongly advised the patient to stop smoking, that this is not helping, and to try and get a partial prescription filled at the drug store, as we do not have any samples of those particular medications. Call if continuing problems.

(Tr. at 209.) The record does not indicate that claimant ever called Nurse Thomas to report any continuing problems.

[4] Based upon the May 17, 2000, examination, Nurse Thomas completed a Vascular Impairment Form, on June 16, 2002, reporting claimant's condition and recommended therapy: "keep feet up when sitting, compression hose, stop smoking." (Tr. at 211.)

5

In addition to the foregoing, claimant: (1) underwent a consultative evaluation including a physical examination, for purposes of her claim, conducted by Dr. Frank Schell (a nontreating source) on August 8, 2000 (Tr. at 212-14); (2) had a residual functional capacity ("RFC") assessment performed by Dr. Burton Nault (a nonexamining source) on August 23, 2000 (Tr. at 215-23); and (3) had Nurse Thomas[5] complete an RFC questionnaire (Tr. at 228-31) on March 8, 2001.[6]

Claimant reported to Dr. Schell, on August 8, 2000, that she suffered from migraine headaches that were fairly well controlled with Inderal, as well as poor circulation in her lower legs that caused pain and swelling and which was exacerbated by standing. (Tr. at 212.) Dr. Schell observed extensive varicosities of both

---

[5] While Nurse Thomas treated claimant on one occasion, she does not qualify as a "treating source" because, as a nurse-practitioner, she is not an "acceptable medical source" under either 20 C.R.R. §§ 404.1502 and 404.1513(a) or 20 C.F.R. §§ 416.902 and 416.913(a).

[6] The March 8, 2001, RFC questionnaire was based upon Nurse Thomas's May 17, 2000, physical examination. This must be the case because the June 16, 2002, Vascular Impairment Form lists May 17, 2000, as the date of claimant's most recent physical examination. (Tr. at 211.)

superficial and deep veins, mild ankle edema and tenderness, but no phlebitis, thrombosis or stasis ulceration. (Tr. at 213.)

Dr. Nault's August 23, 2000, RFC assessment was based upon claimant's allegation of disability due to "small vessel disease – poor circulation/high blood pressure/headaches." (Tr. at 221.) Based upon Dr. Schell's examination and claimant's own report of her activities of daily living ("ADL"), Dr. Nault concluded:

> [T]he claimant is identified as having some superficial varicosities in the lower legs, without complication. She is also identified as having migraine headaches, under good control, and mild hypertension that has responded to treatment. The MER provided by her recent evaluation by Dr. Frank Schell identifies no findings that would interfere with a full functional capacity for the claimant. No Listings level impairment is supported and no total disability can be established. Her level of activity appears to be well-supported by her own ADL's. There is no opinion expressed by any treating or evaluating source, as to her retained functional capacity.

(Tr. at 221.)

Finally, according to Nurse Thomas's March 8, 2001, RFC questionnaire, which was based upon her May 17, 2000, physical examination, claimant: (1) suffered from an impairment that had

7

lasted or could be expected to last for more than twelve months (Tr. at 228); (2) was incapable of even low-stress jobs because of her headaches (Tr. at 229); (3) could sit for no more than twenty minutes at a time (Tr. at 229); (4) could stand for no more than fifteen minutes at a time (Tr. at 229); (5) could sit and stand/walk for less than two hours per day (Tr. at 230); (6) needed to walk for ten minutes every fifteen to twenty minutes (Tr. at 230); (7) needed to be able to shift positions at will (Tr. at 230); (8) needed to take unscheduled ten- to fifteen-minute breaks, every ten to fifteen minutes (Tr. at 230); (9) was likely to have good days and bad days (Tr. at 231); and (10) was likely to be absent from work more than four days per month due to her impairment (Tr. at 231). Nurse Thomas further opined that claimant's impairments were reasonably consistent with the symptoms and functional limitations described elsewhere in the questionnaire. (Tr. at 229.)

Claimant's hearing was held on April 26, 2001. In a decision dated September 19, 2001, the ALJ upheld the denial of benefits, based upon the following findings:

8

3.   The claimant's superficial varicose veins
     [constitute] a severe impairment, based upon the
     requirements in the Regulations (20 C.F.R. §§
     404.1521 and 416.921).

4.   This medically determinable impairment does not
     meet or medically equal one of the listed
     impairments in Appendix 1, Subpart P, Regulation
     No. 4.

5.   The undersigned finds the claimant's allegations
     regarding her limitations are not totally credible
     for the reasons set forth in the body of the
     decision.[7]

6.   The undersigned has carefully considered all of
     the medical opinions in the record regarding the
     severity of the claimant's impairment (20 C.F.R.
     §§ 404.1527 and 416.927).

7.   The claimant has the following residual functional
     capacity: an ability to lift and carry 25 pounds
     on a regular basis and fifty pounds occasionally.
     There are no limits in the ability to sit, stand
     or walk.

8.   The claimant's past relevant work, as a clothes
     sorter did not require the performance of work-
     related activities precluded by her residual
     functional capacity (20 C.F.R. § §§ 404.1565 and
     416.965).

---

[7] In the body of his decision, the ALJ noted that: (1)
claimant "has not had extensive medical treatment for her
complaints of pain and swelling;" (2) claimant had not stopped
smoking, as she had been advised to do; (3) "no treating
physician has placed limits on the claimant that would eliminate
all work;" and (4) the medical source upon which claimant relies,
Nurse Thomas, is a nurse rather than a physician.  (Tr. at 21.)

9

9.   The claimant's medically determinable superficial
     varicose veins do not prevent the claimant from
     performing her past relevant work.

(Tr. at 22.)


## Discussion

According to Evans, the ALJ's decision should be reversed, and the case remanded, because the ALJ failed to consider all relevant medical opinions when determining claimant's residual functional capacity. Specifically, claimant argues that the ALJ did not properly consider Nurse Thomas's RFC questionnaire and failed to adequately address certain conflicts in the evidence. Respondent counters that the ALJ correctly discounted Nurse Thomas's RFC questionnaire because Nurse Thomas: (1) is not a physician; (2) completed the questionnaire approximately ten months after examining claimant; and (3) offered opinions inconsistent with the record as a whole.

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible for

10

supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The question in this case is whether the ALJ properly considered the medical evidence before him when he determined that claimant was not under a disability because she was capable of resuming her past work.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage
> in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment
> which can be expected to result in death or which has
> lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits). Moreover,

> [a]n individual shall be determined to be under a
> disability only if [her] physical or mental impairment
> or impairments are of such severity that [she] is not
> only unable to do [her] previous work but cannot,
> considering [her] age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in which

11

[she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also 42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard determining eligibility for SSI benefits).

In order to determine whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 U.S.C. §§ 404.1520 (DIB) and 416.920 (SSI).

The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhard, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

12

The claimant bears the burden of proving that she is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> In assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) plaintiff's subjective claims of pain and disability as supported by the testimony of the plaintiff or other witness; and (3) the plaintiff's educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

To assess a disability claim, the Commissioner "need[s] evidence from acceptable medical sources to establish whether [claimant] has a medically determinable impairment(s)"  20 C.F.R. § 404.1513(a).[8]  The category "acceptable medical sources"

---

[8] Throughout this section, reference is made to the regulations governing applications for DIB benefits, 20 C.F.R. §§ 404.1 et seq.  The regulations pertaining to SSI benefits, §§ 416.101 et seq., are virtually identical with respect to the matters at issue in this case.

includes licensed physicians, § 404.513(a)(1), but does not include nurse-practitioners, who are classified as "other sources." § 404.1513(d)(1). (Acceptable medical sources are further subdivided into treating sources, nontreating sources, and nonexamining sources. § 404.1502.) While the Commissioner requires evidence from acceptable medical sources in order to establish a claimant's disability, see § 404.1513(a), the Commissioner "may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [claimant's] ability to work." § 404.1513(d) (emphasis added).

The evaluation of medical opinions is governed by 20 C.F.R. § 404.1527, which provides that the Commissioner, when "deciding whether [claimant] is disabled, will always consider the medical opinions in [claimant's] case record together with the rest of the relevant evidence." § 404.1527(b). Medical opinions, in turn, "are statements from physicians and psychologists or other acceptable medical sources . . ." § 404.1527(a)(2). During the process of review, when the Commissioner determines that "any of the evidence in [a] case record, including any medical opinion(s), is inconsistent with other evidence or is internally

14

inconsistent, [she] will weigh all of the evidence and see whether [she] can decide whether [claimant is] disabled based on the evidence [she has]." § 404.1527(c)(2). When it is necessary to weigh medical evidence, every medical opinion will be evaluated, regardless of its source. § 404.1527(d). According to the established hierachy of medical sources, opinions from treating sources are given the greatest weight,[9] followed, in order, by opinions from nontreating sources and opinions from nonexamining sources. §§ 404.1527(d)(1) and (2). In addition to considering the opinions of acceptable medical sources, in the manner outlined above, the Commissioner "may also use evidence from other sources" such as nurse-practitioners. § 404.1513(d)(1).

Here, claimant argues that the ALJ committed a legal error by failing to consider Nurse Thomas's RFC questionnaire (in violation of 20 C.F.R. § 404.1527(a)(4)(d)), by failing to explain the inconsistencies between Thomas's questionnaire and

_____

[9] When a treating source's opinion is not given controlling weight, the amount of weight it is given is based upon the length of the treating relationship, the frequency of examination, the nature and extent of the treating relationship, supportability, consistency, specialization, and other relevant factors. 20 C.F.R. §§ 404.1527(2)-(6).

15

the nonexamining physician's opinion, and by failing to properly evaluate claimant's complaints of pain (in violation § 404.1529).

Claimant's argument is unfounded.  To begin, as a nurse-practitioner, Nurse Thomas is not a physician and does not otherwise qualify under the applicable regulations as an "acceptable medical source."  Accordingly, her RFC questionnaire does not qualify as a "medical opinion" for purposes of 20 C.F.R. § 404.1527, which defines "medical opinion" as a statement from a physician or other acceptable medical source.  Nurse Thomas's RFC questionnaire does qualify under the regulations as evidence from an "other source."  And while § 404.1513(d) provides that the Commissioner may use evidence from "other sources" to evaluate the severity of a claimant's impairment, the language of that provision is permissive rather than mandatory.  In other words, it is not at all clear that the ALJ was under any obligation to consider Nurse Thomas's RFC questionnaire.

But, in this case the ALJ did consider Nurse Thomas's RFC questionnaire.  Moreover, he also gave reasons for according that questionnaire relatively little weight, including Nurse Thomas's

16

role as a nurse-practitioner and the extended time that elapsed between her examination of claimant and completion of the questionnaire.[10]  Thus, it is inaccurate to say that the ALJ failed to consider Nurse Thomas's opinion.

It is similarly inaccurate to say that the ALJ failed to properly consider inconsistencies in the evidence.  This is not a case like Nguyen v. Callahan, 997 F. Supp. 2d 179 (D. Mass. 1998), in which an ALJ did not even mention a psychological

---

[10] In addition to the reasons cited by the ALJ for discounting Nurse Thomas's RFC questionnaire, the record also shows that claimant was treated by Nurse Thomas only once, on May 17, 2000.  A single office visit is not the sort of treating relationship that is entitled to great weight.  Leaving aside the fact that Nurse Thomas is not a "treating source," and as a result could not provide a "medical opinion," the following principles are instructive:

> Generally, [the Commissioner] give[s] more weight to opinions from [claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).  Here, Nurse Thomas's treatment relationship with claimant consisted of an individual examination.

assessment that reached a conclusion contrary to the two assessments on which he had relied.  Id.  at 182.  Unlike the ALJ in Nguyen, the ALJ here did recognize and consider the contradictory evidence, and explained why he discounted it.  By explicitly weighing the evidence, the ALJ completely fulfilled his obligation under 20 C.F.R. § 404.1527(c)(2).

In sum, the ALJ committed no legal error.  Although the ALJ might have given Nurse Thomas's RFC questionnaire more weight than he did, and might reasonably have decided in claimant's favor, the existence of a legally supportable alternative resolution does not provide a legally sufficient basis for reversing an ALJ's decision that is supported by substantial evidence.  See Tsarelka, 842 F.2d at 535.  Accordingly, the ALJ's decision is affirmed.

## Conclusion

For the reasons given, claimant's motion to reverse and remand (document no. 8) is denied and the Commissioner's motion for an order affirming her decision (document no. 10) is granted.

18

The Clerk shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 4, 2003

cc:  David L. Broderick, Esq.
     Jane M. Ferrini, Esq.

19