Torrey v. SSA                          CV-03-293-M    01/21/04
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Karen M. Torrey,
        Claimant

        v.                              Civil No. 03-293-M
                                        Opinion No. 2004 DNH 017
Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
        Respondent


                         **O R D E R**


        Pursuant to 42 U.S.C. § 405(g), claimant, Karen Torrey,

challenges the Commissioner's decision denying her application

for Supplemental Security Income Payments under Title XVI of the

Social Security Act, 42 U.S.C. § 1382 (the "Act").  Respondent

objects and moves for an order affirming her decision.


        For the reasons set forth below, the matter is remanded to

the Administrative Law Judge ("ALJ") for further proceedings

consistent with this opinion.

**Factual Background**

I. Procedural History.

In May of 2001, claimant filed an application for supplemental security income payments, alleging that she had been unable to work since May 22, 2001, due to degenerative disc disease, arthritis, asthma, depression, and a learning disability. The Social Security Administration denied her application. That denial of benefits permitted claimant to immediately request a hearing before an ALJ, which she did. Accordingly, on July 24, 2002, claimant, her attorney, and a vocational expert appeared before an ALJ who considered her claims de novo.

The ALJ issued his order on December 3, 2002, concluding that claimant was subject to some exertional and non-exertional limitations and incapable of returning to her past relevant work. Nevertheless, the ALJ concluded that claimant was able to perform work that exists in significant numbers in the national economy and was not, therefore, disabled. The Appeals Council denied claimant's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner.

2

In response, claimant filed this timely action, asserting that the ALJ's decision is not supported by substantial evidence. She then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 4).[1]  The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 5).  Those motions are pending.

II.  Stipulated Facts.

Pursuant to Local Rule 9.1(d), the parties have submitted a comprehensive statement of stipulated facts which, because it is part of the court's record (document no. 6), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  Properly Supported Factual Findings by the ALJ
     are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a

---

[1]  Although captioned as a motion to reverse the decision of the Commissioner, claimant actually moves the court to remand this matter to the ALJ for further inquiry into her residual functional capacity.  See Claimant's memorandum at 5.

3

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. § 1383(c)(3); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[2]

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769. Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those

---

[2] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

4

determinations are supported by specific findings.  See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.    The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that her impairment prevents her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to

establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective assertions of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  Provided the claimant has shown an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 416.920. Ultimately, a claimant is disabled only if her:

physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to remand this proceeding to the ALJ and the Commissioner's motion to affirm the determination that claimant is not disabled.

**Discussion**

I.  Background - The ALJ's Findings.

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 416.920. Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since March 22, 2001 (her alleged onset of disability). Next, the ALJ determined that the medical evidence of record indicates that claimant does suffer an impairment or combination of impairments considered to be "severe" under the pertinent regulations - specifically, a cardiac condition and asthma. Nevertheless, he concluded that claimant possesses a residual functional capacity ("RFC") that permits her to perform a range of light work, provided she is permitted to alternate between a seated and standing position and assigned to perform non-complex tasks.

8

Additionally, due to her non-exertional limitations, she must avoid concentrated dust and/or fumes and poor ventilation and is modestly limited in her ability to get along well with co-workers and to respond appropriately to criticism.

In light of those restrictions on claimant's ability to work, the ALJ determined that she could not return to any of her past relevant occupations. Nevertheless, he concluded that claimant did have the RFC to perform a significant range of light work that is available in substantial numbers in the national economy. Accordingly, at step five of the sequential analysis, the ALJ determined that claimant was not "disabled," within the meaning of the Act.

II. Claimant's Assertion of Error.

In her motion seeking an order remanding this proceeding to the ALJ, claimant says the ALJ erred by "failing to consult with a medical expert where the record was devoid of any analysis of functional capacity by a physician or other expert." Claimant's memorandum at 4. Specifically, claimant says the ALJ "relied upon a physical residual functional capacity assessment rendered

9

by Linda Ellsworth, a claim adjudicator at Disability Determination Services," id., a person who, according to claimant, is not an "acceptable medical source" under the pertinent regulations.

The Commissioner, on the other hand, says the ALJ's determination of claimant's RFC is entirely consistent with the medical evidence of record and the reports prepared by claimant's various treating (and non-treating) professionals. Consequently, the Commissioner asserts that, under the circumstances presented in this case, the ALJ did not "overstep his bounds as a lay person [by] render[ing] a judgment on the raw medical data." Commissioner's memorandum at 6. On this record, and in light of the ALJ's written decision, the court cannot agree.

Claimant rests her motion to remand largely upon language quoted from an opinion issued by the United States District Court for the District of Massachusetts, in which the court noted:

> "Where an ALJ reaches conclusions about claimant's physical exertional capacity without any assessment of RFC by a physician, the ALJ's conclusions are not supported by substantial evidence and it is necessary

10

to remand for the taking of further fuctiona[l] evidence."

Brown v. Chater, 927 F. Supp. 10, 16 (D. Mass. 1996) (quoting Perez v. Secretary of Health & Human Services, 958 F.2d 445, 446 (1st Cir. 1991)). As further support for her argument, claimant points to a more recent opinion from the Court of Appeals, in which the court observed that, "[w]ith few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996) (citing Perez, 958 F.2d at 446). That court went on to observe that:

> Of course, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment. But when, as now, a claimant has sufficiently put her functional inability to perform her prior work in issue, the ALJ must measure the claimant's capabilities, and to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.

Manso-Pizarro, 76 F.3d at 17 (citations and internal punctuation omitted). Ultimately, the court concluded that if the record

11

evidence "suggests a relatively mild physical impairment posing, to the layperson's eye, no significant exertional restrictions, then [the court] must uphold the ALJ's finding [of no disability]; elsewise, we cannot (in the absence of an expert's opinion)."  Id. at 17-18.

III. The ALJ's Decision and the Record Evidence.

A claimant's residual functional capacity, or RFC, represents "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing bases.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Social Security Ruling ("SSR") 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *1 (July 2, 1986).  A claimant's RFC is determined based upon a review of "all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' - i.e., opinions about what the individual can still do despite his or her impairment(s) -

12

submitted by an individual's treating source or other acceptable medical sources." Id. at *2. See also 20 C.F.R. § 416.945.

When determining a claimant's functional capacity, an ALJ must consider, among other things:

> medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available.

SSR 96-8p, 1996 WL 374184 at *5. And, importantly, the ALJ's decision must include a discussion describing how he or she actually determined the claimant's RFC and the evidence upon which he or she relied.

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . .. The

> adjudicator <u>must also explain</u> how any material
> inconsistencies or ambiguities in the evidence in the
> case record were considered and resolved.

<u>Id.</u> at *7 (emphasis supplied).

Here, although the ALJ's opinion correctly identifies the relevant factors that must be considered, it fails to discuss those factors or explain how they support his ultimate conclusion. There is, for example, no discussion of claimant's activities of daily living. Nor is there any mention of the effect upon claimant's ability to perform work-related tasks by the symptoms reasonably attributed to her impairments. In fact, although the ALJ appears to have (implicitly) adopted the findings set forth in the physical residual functional capacity assessment prepared by Ms. Ellsworth, that report is not discussed (or even mentioned) in the ALJ's decision.

Given the fact that none of claimant's treating physicians expressed an opinion as to her functional capacity and in light of the ALJ's failure to discuss the other factors relevant to that inquiry, the most sensible approach is to remand this matter to the ALJ for further findings and likely a physical residual

14

functional capacity assessment, completed by one (or more) of claimant's treating sources.

## Conclusion

There is, to be sure, evidence in the record which suggests that claimant is, as one of her treating physicians observed, "not motivated to get better." Transcript at 233. There is also some suggestion, based upon the results of her personality testing, that she may be "exaggerating her symptoms for secondary gain." Id. at 187. Alternatively, however, it is possible that she is "in such distress that she is using the [personality] test as a 'cry for help,' to emphasize how much psychological pain she is in." Id. There is also some question as to whether or not claimant has been fully compliant with the treatment prescribed by her doctors (at least as it relates to weight loss and smoking cessation, given her long history of asthma, her obesity, and the extent to which those conditions appear to contribute to her disability). See generally 20 C.F.R. 416.930 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work"). See also Progress notes completed by Dr. Christina Anderson, transcript at

190 (opining that, as of September 2001, "none of these conditions in [claimant] are disabling [in the long term]. All are treatable.").

Nevertheless, it is clear that claimant does presently suffer from "severe" impairments that might well preclude her from performing any work that exists in the national economy. Unfortunately, however, the record is insufficiently developed (particularly with regard to claimant's RFC) to accurately assess whether the ALJ's disability determination is supported by substantial evidence. If presented with a different record, which more clearly supported the ALJ's assessment of claimant's RFC, it might be possible to affirm his denial of benefits, notwithstanding his reliance upon a "Physical Residual Functional Capacity Assessment" form completed by someone other than an acceptable medical source. But, for the reasons noted above, that is not possible on the current record; it is simply unclear what effect claimant's impairments have on her "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing bases." SSR 96-8p, 1996 WL 374184 at *1.

Accordingly, pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ so that he might more fully consider (and discuss) the evidence of record concerning claimant's residual functional capacity, and, if he deems appropriate, to obtain a "Physical Residual Functional Capacity Assessment" form from one or more of claimant's treating sources.

Claimant's motion to reverse the decision of the Commissioner (document no. 4) is granted to the extent it seeks remand of this matter to the ALJ. In all other respects, it is denied. The Commissioner's motion for an order affirming her decision (document no. 5) is denied. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 21, 2004

cc: David L. Broderick, Esq.
    D. Lance Tillinghast, Esq.