Down v. SSA                              CV-04-111-SM  11/16/04
                   UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


David W. Downs,
      Petitioner

      v.                                 Civil No. 04-111-SM
                                         Opinion No. 2004 DNH 160
Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
      Respondent


                           **O R D E R**



      Pursuant to 42 U.S.C. § 405(g), claimant, David W. Downs,

moves to reverse the Commissioner's decision denying his

application for Social Security disability insurance benefits,

under Title II of the Social Security Act, 42 U.S.C. § 423, and

asks the court to remand the case.  The Commissioner, in turn,

moves for an order affirming her decision.  For the reasons given

below, the matter is remanded to the Administrative Law Judge

("ALJ") for further proceedings consistent with this opinion.



                         **Standard of Review**

      The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st

2

Cir. 1980) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." <u>Irlanda Ortiz v. Sec'y of HHS</u>, 955 F.2d 765, 769 (1st Cir. 1991) (quoting <u>Rodriguez v. Sec'y of HHS</u>, 647 F.2d 218, 222 (1st Cir. 1981)).[1]

## Background

The parties have submitted a Joint Statement of Material Facts (document no. 7). Because that statement is part of the court's record, it will be summarized here, rather than repeated in full.

Claimant suffers from a variety of psychological and physical conditions, including carpel tunnel syndrome, degenerative disc disease, and somatoform disorder. He applied

---

[1] "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citations omitted). Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." <u>Tsarelka v. Sec'y of HHS</u>, 842 F.2d 529, 535 (1st Cir. 1988).

for a period of disability beginning on January 1, 1994, and was insured for disability benefits through December 31, 1997.  The record in this case includes: (1) a Physical Residual Functional Capacity Assessment by a state-agency physician, dated January 6, 1997 (Administrative Transcript (hereinafter "Tr.") at 289-96);[2] (2) a Medical Assessment of Ability to do Work-Related Activities (Physical) by treating physician George W. Costello, dated November 10, 1997 (Tr. at 298-302; (3) a Medical Assessment of Ability to do Work-Related Activities (Mental) by examining psychologist Thomas P. Lynch, dated April 9, 1998 (Tr. at 333-36); and (4) a Physician/Psychologist Statement for Exemption/Limitation from the New Hampshire Employment Program Work Requirement by treating physician Peter B. Hope, dated June 6, 2001 (Tr. at 342-43).

According to the January 6, 1997, residual functional capacity ("RFC") assessment performed by a non-examining agency physician, Downs was able to stand and/or walk for about six hours in an eight-hour workday.  (Tr. at 290.)  According to the November 10, 1997, report of a treating physician, Dr. Costello,

_____

[2] The January 6, 1997, assessment was affirmed by agency physician Burton A. Nault on May 30, 1997.  (Tr. at 296.)

Downs was able to stand and/or walk for one hour without interruption and for a total of four hours in an eight-hour day. (Tr. at 299.)

In her decision denying claimant's application for disability insurance benefits, the ALJ made the following findings:

3. The medical evidence establishes that on the date his insured status expired the claimant had degenerative disc disease, back pain and somatoform disorder, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's statements concerning his impairments and their impact on his ability to work on the date his insured status expired are not entirely credible in light of the claimant's own description of his activities and life style, the medical history, the findings made on examination and the reports of the treating and examining practitioners.

5. On December 31, 1997, the date his insured status expired, the claimant lacked the residual functional capacity to lift and carry more than 20 pounds, or more than ten pounds on a regular basis, or perform more than unskilled jobs and work in a low stress environment. He would also require an opportunity to change positions from sitting to standing at least every hour.

. . .

5

7.  On the date his insured status expired, the claimant's capacity for the full range of light or sedentary work was diminished by his inability to perform more than unskilled jobs and work in a low stress environment. He would also require an opportunity to change positions from sitting to standing at least every hour.

. . .

11. Based on an exertional capacity for light and sedentary work, and the claimant's age, educational background, and work experience, Section 404.1569 and Rule 202.18, Table 2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

12. Although the claimant was unable to perform the full range of light work on the date his insured status expired, he was capable of making an adjustment to work which exists in significant numbers in the national economy. Such work includes employment as cashier, outside deliverer, cafeteria attendant and packing line worker. A finding of "not disabled" is therefore reached within the framework of the above-cited rule.

(Tr. at 26-27.)


## Discussion

According to claimant, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) improperly evaluated the vocational and medical evidence; (2) relied on improper hypothetical questions and vocational evidence that did

6

not account for all of claimant's limitations; and (3) made a credibility determination not supported by substantial evidence. The Commissioner disagrees, categorically.

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). The only question in this case is whether the ALJ correctly determined that claimant was not under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage
> in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment
> which can be expected to result in death or which has
> lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). Moreover,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment or
> impairments are of such severity that he is not only
> unable to do his previous work but cannot, considering

7

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In order to determine whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process. <u>See</u> 20 U.S.C. §§ 404.1520.

The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

8

Seavey v. Barnhard, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920, which outlines the same five-step process as

the one prescribed in 20 C.F.R. § 1520).


The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at Step
> 4 to show that he or she is unable to do past work due
> to the significant limitation, the Commissioner then
> has the burden at Step 5 of coming forward with
> evidence of specific jobs in the national economy that
> the [claimant] can still perform.  Arocho v. Sec'y of
> Health & Human Servs., 670 F.2d 374, 375 (1st Cir.
> 1982).  If the [claimant's] limitations are exclusively
> exertional, then the Commissioner can meet her burden
> through the use of a chart contained in the Social
> Security regulations.  20 C.F.R. § 416.969; Medical-
> Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P,
> App. 2, tables 1-3 (2001), cited in 20 C.F.R. §
> 416.969; Heckler v. Campbell, 461 U.S. 458 (1983).  "The
> Grid," as it is known, consists of a matrix of the
> [claimant's] exertional capacity, age, education, and
> work experience.  If the facts of the [claimant's]
> situation fit within the Grid's categories, the Grid
> "directs a conclusion as to whether the individual is
> or is not disabled."  20 C.F.R. pt. 404, subpt. P, App.
> 2, § 200.00(a), cited in 20 C.F.R. § 416.969.  However,
> if the claimant has nonexertional limitations (such as
> mental, sensory, or skin impairments, or environmental

restrictions such as an inability to tolerate dust, id. § 200(e)) that restrict his [or her] ability to perform jobs he [or she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision," 20 C.F.R. § 416.969a(d) (2001). See also Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (discussing use of Grid when applicant has nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted). Finally,

In assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) plaintiff's subjective claims of pain and disability as supported by the testimony of the plaintiff or other witness; and (3) the plaintiff's educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

Claimant makes several arguments regarding the ALJ's evaluation of the medical and vocational evidence. Specifically, he claims that the ALJ: (1) mishandled the medical evidence by failing to properly evaluate, weigh (and clarify) treating physicians' evidence and by failing to fully develop the medical

10

record; and (2) adopted an erroneous residual functional capacity ("RFC").

Claimant's arguments are, at several points, based upon a flatly inaccurate characterization of the record.  For example, the ALJ did not ignore the significance of Dr. Costello's assessment of claimant's ability to do work-related activities, as claimant repeatedly asserts.  To the contrary, the ALJ referred to Dr. Costello's findings in her decision[3] and adopted many of them.  Cavalier imprecision such this is, to say the least, counterproductive.

However, despite claimant's overreaching, he identifies an issue that requires remand - the manner in which the ALJ addressed claimant's capacity to stand and/or walk.  Claimant's capacity for standing and/or walking is important because all four occupations the ALJ identified as suitable for claimant are at the "light" exertional level, "which requires standing or

_____

[3] As the Commissioner concedes, the ALJ erroneously attributed Dr. Costello's report to Dr. Stone – an understandable error given the quality of Dr. Costello's penmanship – but the fact remains that the content of Dr. Costello's report is fully incorporated into the ALJ's decision.

walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251, at *6; see also 20 C.F.R. § 404.1567(b); Heggarty v. Sullivan, 947 F.2d 990, 994 (1st Cir. 1991).

It is not apparent from the ALJ's decision which assessment she used to reach her determination of claimant's RFC, the January 6, 1997, non-examining physician's finding that he could stand and/or walk for six hours per eight-hour day (Tr. at 290), or the November 10, 1997, treating physician's finding that he could stand and/or walk for no more than an hour at a time and for no more than four hours in an eight-hour day (Tr. at 299). In the text of her decision, she mentions both the agency physician's determination (Tr. at 24) and Dr. Costello's determination (Tr. at 22), but in her formal findings, she does not select one over the other, and makes no specific finding regarding claimant's capacity to stand and/or walk.  Rather, she finds that claimant "would require an opportunity to change positions from sitting to standing at least every hour," (Tr. at 27), a finding which incorporates part, but not all, of Dr. Costello's appraisal of claimant's capacity for standing and/or

12

walking.  The ALJ's question to the Vocational Expert ("VE") was phrased in the same way.  (Tr. at 48.)  Thus, the ALJ's decision simply does not provide a finding regarding claimant's capacity for standing and/or walking.

There are two possibilities.  If the ALJ accepted Dr. Costello's opinion that claimant was limited to no more than four hours of standing and/or walking per eight-hour workday, then she erred in determining that he had the capacity for any form of light work.  If, on the other hand, she accepted the agency physician's opinion that claimant had the capacity to stand and/or walk for six hours per eight-hour workday, then she had an obligation to explain the way in which she weighed the two medical opinions and chose one over the other.  See 20 C.F.R. §§ 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have."); 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's

13

opinion."). The need to explain a decision to credit the agency opinion over Dr. Costello's opinion[4] would seem to be heightened in this case, given the ALJ's own finding that claimant suffered from a degenerative condition (Tr. at 26), and that acceptance of the more recent of the two opinions, Dr. Costello's, would preclude a finding that claimant had the RFC for light work. Because the ALJ's decision does not disclose what capacity for standing and/or walking the ALJ ascribed to claimant, it is not possible to affirm her decision that claimant has the residual functional capacity for light work. Accordingly, the case must be remanded for further consideration of that issue.

Because this case is being remanded, claimant's remaining arguments are moot. Nonetheless, the court offers the following observations. First, Dr. Hope's two-page report (Tr. at 341-42)

---

[4] The Commissioner is mistaken in her characterization of Dr. Costello's report as an opinion on a matter expressly reserved to the Commissioner. Plainly, an ALJ should not consider, as a medical opinion, a physician's statement that a claimant is disabled or a physician's statement regarding a claimant's RFC. However, this case does not involve a statement by Dr. Costello that Downs was disabled, nor does it involve a statement by Dr. Costello specifying Downs's RFC. Rather, what is at issue is Dr. Costello's medical opinion that claimant had the ability to stand and/or walk for only four hours per day. Downs's ability to stand and/or walk is a matter of medical opinion, not a matter expressly reserved to the Commissioner.

was completed on June 5, 2001, more than three years after claimant's insured status expired; that report gives no indication that it was retrospective.[5] Thus, Dr. Hope's report would appear to be irrelevant in determining claimant's RFC as of December 31, 1997. Second, without the benefit of a full analysis, it would appear that the ALJ's credibility determination was well supported in the body of her decision. Among other things, the ALJ noted that claimant's treatment history for back, neck, and wrist pain was inconsistent with the severity of his pain allegations (Tr. at 21), and also stated that Dr. Stone's concerns over claimant's possible drug-seeking behavior reflected negatively on claimant's credibility (Tr. at 22). Third, while the ALJ might have made more specific findings regarding the impact of claimant's mental impairments on his capacity for unskilled work, the law does not require the level of specificity that claimant invokes. See Lancellotta v. Sec'y

---

[5] In addition, that report was completed not to establish claimant's RFC for Social Security purposes, but to determine whether he qualified for a waiver of the work requirement imposed by the State of New Hampshire's Temporary Assistance for Needy Families ("TANF") program. Thus, the form seems necessarily to have been related to claimant's condition at the time of his TANF application, not some earlier time.

15

of Health & Human Servs., 806 F.2d 284, 285-86 (1st Cir. 1986) (interpreting SSR 85-15, 1985 WL 56857 (S.S.A. 1985)).

## Conclusion

For the reasons given, claimant's motion to remand (document no. 6) is granted, and the Commissioner's motion for an order affirming the ALJ's decision (document no. 8) is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings. The Clerk of the Court shall enter judgement in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 16, 2004

cc:  David L. Broderick, Esq.
     Karen B. Nesbitt, Esq.